No. 84-44

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

IN RE THE MARRIAGE OF
BONITA KAY BUXBAUM,

        Petitioner and Respondent,

  -vs-

ADAM LEROY BUXBAUM,

        Respondent and Appellant.

APPEAL FROM: District Court of the Seventh Judicial District,
In and for the County of Dawson,
The Honorable M. James Sorte, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        R. W. Heineman argued, Wibaux, Montana

    For Respondent:

        Cox & Simonton; Marvin L. Howe argued, Glendive,
Montana

    For Amicus Curiae:

        Huntley & Eakin; Ira Eakin argued for Adam Buxbaum,
Baker, Montana

Submitted: September 21, 1984

Decided: December 6, 1984

Filed:      DEC 6 1984

Ethel M. Harrison

Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Adam Leroy Buxbaum appeals from a decree of dissolution of marriage in the District Court, Seventh Judicial District, in and for Dawson County, with respect to the distribution of the marital estate. The wife, Bonita Kay Buxbaum cross-appeals.

The parties were married in 1964 and their marriage was dissolved in 1983. During the marriage, they ranched near Glendive, Montana. She was 17 years old when she married; he was 21 years old. At the time of the dissolution, they were 37 and 41 years old respectively. They have two sons, a 20 year old and 16 year old living with his mother at the time of the dissolution. Her health is normal; he has had cancer of his arm.

The wife quit high school her senior year to marry. From 1964 to 1975, she worked as a homemaker and on the ranch. In 1975, in addition to her home and ranch work, she began working as a secretary at a parochial school in Glendive to help maintain the family. Her current net income is approximately $8,400. Early in the marriage the husband worked with his father. In 1972, the ranch was incorporated and the son took over primary responsibility. He contributed to the corporation a lease agreement on over 3,000 acres. He continues to farm the lease, keeping two-thirds of the profit and returning one-third to the lessor. His father contributed ranchland and equipment to the corporation. At incorporation, the following stock was issued:

| | |
|---|---|
| Husband's father | 45 shares |
| Husband's mother | 41 shares |
| Husband & wife | 14 shares |
| Total | 100 |

Husband's father died in 1976. Prior to his death, the father and his spouse each reissued four additional shares of stock to the husband and wife. The father bequeathed six shares to his spouse and 35 shares to a testamentary trust for the wife's benefit. The ownership of the corporation now is:

| | |
|---|---|
| Trust | 35 shares |
| Husband's mother | 43 shares |
| Husband & wife | 22 shares |
| Total | 100 |

The date-of-death value on December 11, 1976 was $3,000 per share.

The father's trust allocated all of the trust income to the husband's mother, who is living. At her death, the 35 shares are to be distributed 85% to Adam, (29.75 shares) and 15% to Adam's sisters (5.25 shares). The trust principal has generated no income because the corporation has never paid a dividend. The husband, as trustee, has the power to invade the principal of the trust for his mother's benefit but has never done so.

Financial statements prepared to obtain a loan by the parties, and submitted by the wife as evidence of net worth, showed the following:

| | Corporation's Net Worth | | | Husband's Net Worth |
|---|---|---|---|---|
| 2/12/82 | $411,615 x 49% | = | | 201,691 |
| 3/9/83 | 347,487 x 57% | = | | 198,068 |

The District Court used the appraised value of the corporate assets, rather than the financial statements, as evidence of net worth. The appraised value of the real estate was determined by the husband's expert witness. The husband appraised the value of the personal property.

The resulting figures are:

| | |
|---|---|
| Real Property | $183,440 |
| Personal Property | 152,660 |
| Total Corporation Value | $336,100 |
| Less: | |
| Corporate Debt to PCA | ($58,000) |
| Miscellaneous Corporation Debts | ($22,000) |
| Wages due Husband's Mother | ($13,200) |
| Net Value | $242,900 |

No value was assigned by the court to the 3,000 acre leasehold, calves, growing crops, feed on hand or other miscellaneous assets.

The District Court included in the marital estate the husband's remainder interest in the trust of 29.75 shares and also included the 22 jointly-held shares for a total of 51.75 shares.

On the basis of the appraised value of the 51.75 shares, the District Court awarded to the wife $70,850, plus a 1979 automobile. The court ordered the husband to pay one-sixth of the sum now and the remainder over 5 years.

These are the issues on appeal:

1) Should the remainder interest in a trust be included in a marital estate?

2) Must a minority interest in a corporation be discounted?

3) May a District Court order a corporation to be dissolved in the event of nonpayment of a property settlement?

4) Is the wife entitled to one-half of the shares of the corporation received from the husband's parents as a gift during the marriage?

5) Is the child support excessive?

6) Is the maintenance excessive?

7) Should attorney's fees be awarded?

The wife for her part contends that the marital estate was undervalued because the District Court used the appraisal and not the book value of the corporation.

1) WAS THE HUSBAND'S REMAINDER PROPERLY INCLUDED IN THE MARITAL ESTATE AND HOW SHOULD IT BE VALUED?

The husband contends that the remainder interest in the father's testamentary trust estate should not be included in the marital estate for two reasons: (1) it is a mere expectancy, without any enforceable rights; (2) our holding in Hill v. Hill (1982), 197 Mont. 451, 643 P.2d 582 should not apply because Hill involved a future interest in a life estate which was not subject to divestment. The wife responds that it is within the District Court's discretion to distribute such property; that section 40-4-202, MCA, requires future acquisitions of estates to be considered; and the husband has already benefited from his future interests in this stock by using the same as collateral.

Both parties agree that the husband's right to receive the shares of stock from the testamentary trust after the death of his mother is a vested future interest subject to defeasance. In Hill, supra, the husband's remainder interest in a life estate was included in the marital estate. The mother in Hill had the full control, use and possession of the property, and the income therefrom during her lifetime, but the son's remainder interest was not subject to divestment. It was true, however, that in Hill, the son could have predeceased the mother. Nonetheless, his remainder interest was included in the marital estate.

In Goodmundson v. Goodmundson (Mont. 1982), 655 P.2d 509, 39 St.Rep. 2295, a ranch dissolution of marriage case, we stated:

> "Under section 40-4-202, MCA, the District Court must consider future acquisition of assets. The husband's expectation of a sizeable inheritance is therefore a valid consideration in the equitable distribution of marital property." 655 P.2d at 512.

The District Court in the case at bar assigned a current value to the remainder interest and the husband contends that a more accurate value would be the discounted present value of such future interest. Yet the current value of the remainder interest is being used as collateral by the corporation for the purpose of obtaining loans. The court realistically looked at the circumstances and used a proper value based on the underlying assets of the trust.

Always to be remembered in these cases is that a District Court has far-reaching discretion in resolving property divisions and its judgment will not be altered unless a clear abuse of discretion is shown. In Re Marriage of Kaasa (1979), 181 Mont. 18, 22, 591 P.2d 1110, 1112, 1113; In Re Marriage of Kramer (1978), 177 Mont. 61, 580 P.2d 439. The test for reviewing a District Court's discretion is: Did the District Court, in the exercise of its discretion act arbitrarily without employment of conscientious judgment, or exceed the bounds of reason in view of all the circumstances? In Re the Marriage of Aanerson (1979), 183 Mont. 229, 234, 598 P.2d 1120, 1123.

2) WAS THE MARITAL ESTATE OVERVALUED BECAUSE THE DISTRICT COURT DID NOT DISCOUNT THE CORPORATE STOCK TO REFLECT A MINORITY INTEREST?

The husband argues that his minority corporation stock should be discounted to reflect a minority shareholder's lack of control over the corporation; that federal cases have discounted minority stock values for estate tax purposes and that we have approved of discounting minority stock in In Re Marriage of Jorgenson (1979), 180 Mont. 294, 300, 301, 590 P.2d 606, 610. The wife responds on this issue that because of their use of all the corporate stock in financing, Adam, as a fact, controls the corporation regardless of its stock ownership and the District Court has wide discretion in these matters.

This is not a situation where the minority stock should be discounted to determine its value. Discounting usually will apply when the market value of the stock is being estimated and there really is no market to rely on. In this case, the value of the corporation was arrived at by the market value of the underlying assets. It would be inconsistent to discount the minority share of the value of the corporate assets in this case.

3) IS THE DISTRICT COURT ORDER FOR ENFORCEMENT AN ERROR TO THE EXTENT IT AFFECTS THE FAMILY CORPORATION?

The District Court ordered the husband to pay the wife $70,850 in six installments, one within a month of judgment, and then annually for five years. The order goes on to say:

> "If the Respondent fails to exercise his option to purchase the Petitioner's interest, the corporation will be dissolved and the property of the corporation will be sold on the market for cash at a price agreeable to the Parties. If no buyers are received, the property shall be sold at a public sale within three (3) months from the date of Judgment."

The husband contends that the corporation was not a party and therefore the court had no jurisdiction over its

property; that section 35-1-921, MCA, controls the court's power to liquidate corporations and is not applicable in this case; and that the co-owners of the stock in the corporation were not joined as parties in this suit and would have to be joined in a suit for partition or dissolution of the corporation.

The wife contends that the District Court was merely attempting to give her a means of securing her judgment, relying on Burleigh v. Burleigh (Mont. 1982), 650 P.2d 753, 39 St.Rep. 1538.

The power of a court to dissolve a corporation is found in section 35-1-921, MCA. The statute does not include dissolution of a corporation for nonpayment of marital obligations by one of the corporation stockholders. However, a court does have the power to secure a marital settlement by granting a security interest in stock or such further security arrangements as the court may find necessary in order to enforce its decree. See Burleigh, supra.

In this case, the court also distributed a corporate car to the wife. The District Court had no way of knowing that the 1979 car belonged to the corporation because the inventory of corporate property submitted by the husband did not include the automobile.

With respect to this issue, we find it necessary to remand the cause for the District Court to make new provisions for the enforcement and security of the wife's property division. Although a corporate asset in the form of an automobile should not be distributed to the wife, the decree of dissolution should be revised to provide a vehicle for the wife since the District Court found that the wife needs a vehicle.

- 8 -

4) DID THE DISTRICT COURT ERR IN AWARDING TO THE WIFE ONE-HALF OF THE VALUE OF THE SHARES RECEIVED FROM THE HUSBAND'S PARENTS?

Here the husband contends that the shares were a gift from his parents and that the law in Montana is that a spouse is entitled to receive one-half of the increase of value from the date of the gift, but not one-half of the gift itself. In support, he cites In Re Marriage of Herron (1980), 186 Mont. 396, 608 P.2d 97. Herron is not applicable. The divorcing husband there was a physician, the wife was a homemaker. The disputed property was a cabin on Flathead Lake, acquired with funds received from the wife's father. In Herron, the court noted that a ranching situation is distinguishable. We cited with approval, In Re Marriage of Brown (1978), 179 Mont. 417, 587 P.2d 361, where we found that the wife had acquired a vested interest in the ranch property regardless of its source by virtue of her 14 years as a mother, housewife and part-time ranch hand. The District Court determined that the wife's interest in the ranch property was earned by her contributions as a homemaker.

5) IS CHILD SUPPORT OF $400 PER MONTH UNTIL OCTOBER 1988, EXCESSIVE?

The husband contends that the lower court ignored his financial resources in setting child support at $400 per month. Section 40-4-204(5), MCA, makes financial resources of the husband a relevant factor. The findings of fact indicate here that the judge was aware of the husband's financial resources. There is no indication of abuse of discretion.

6) IS THE $200 MAINTENANCE TO THE WIFE UNTIL OCTOBER 1988, EXCESSIVE?

Here again, the court considered the criteria for maintenance listed in section 40-4-203, MCA, and did not abuse its discretion.

7) IS THE AWARD OF ATTORNEY FEES REVERSIBLE ERROR?

Section 40-4-110, MCA, allows reasonable attorney fees if both parties' financial resources are considered. In this case, the wife was awarded attorney fees of $1,576. The findings indicate the judge considered both parties' financial resources. There was, however, no hearing to determine the reasonableness of the fees. On that point, since the case is also being remanded for other reasons, the reasonableness of the attorney fees should be considered by the court. In Re Marriage of Aanenson (1979), 183 Mont. 229, 598 P.2d 1120. We find no error in the award of attorney fees to the wife.

8) THE WIFE CONTENDS THAT THE MARITAL ESTATE WAS UNDERVALUED.

The wife makes three arguments: 1) The District Court used the appraised value of current real estate instead of the corporate book value. The 3,000 acre lease, the calves, grains and other assets were omitted using appraised value. 2) The District Court gave no reasons for finding appraised values of property to be more accurate estimates of the parties' net worth than book value. 3) A portion of the PCA loan that was considered by the court was for current expenses to produce unearned income. By including the loan, but excluding the crops and calves, the wife is required to absorb the expenses of income which she will never receive.

The husband responds to the wife's arguments that the crop failed, the calves were lost, and the lease was worthless; that during the dissolution proceedings the corporation borrowed more money and if unearned income were included, the loan must also be included and, further that unrealized income is speculative.

In Krum v. Krum (Mont. 1980), 614 P.2d 525, 37 St.Rep. 1291, this Court upheld the District Court's exclusion of "the proceeds from the operating loan . . . used largely for noncapital expenses . . . [t]hese expenses have no relationship to a determination of marital assets when the farm proceeds are excluded." Krum at 527 and 528. The District Court could have excluded the operating portion of the PCA loan but it is within its discretion to include it. This decision operated against the wife, but the judge also made decisions that operated in her favor. For example, the future trust interest could have been discounted for valuation yet there the wife argues in favor of judicial discretion.

The wife also contends that the District Court should be reversed because it omitted the lease and other assets and because certain bills amounting to $22,000 and wages to the husband's mother for $13,200 were disputed. In Larson v. Larson (Mont. 1982), 649 P.2d 1351, 1354, 39 St.Rep. 1628, a case relied on by the wife in connection with this issue, we said:

> "Item-by-item findings are not required in property division cases, but findings nevertheless must be sufficiently adequate to ensure that this Court need not succumb to speculation while assessing the conscientiousness or reasonableness of the District Court's judgment."

The findings of fact entered by the court acknowledge the items the wife questions. The District Court did not abuse its discretion in adopting the husband's values.

The decree of dissolution of the District Court is affirmed, except that the cause is remanded for further proceedings in the District Court with respect to the following items:

1. The court shall remove from the decree language respecting sale of the corporate assets to enforce the husband's obligations under the decree of dissolution, but the court may adopt other means of enforcing the terms of its judgment;

2. The court shall make other provisions for an automobile for the wife;

3. The court shall conduct a hearing on the reasonableness of the attorney fees awarded to the wife.

_____
                   Justice

We Concur:

_____
        Chief Justice

_____

_____

_____

_____
              Justices

Mr. Justice L. C. Gulbrandson, deeming himself disqualified, did not participate in this decision.