FILED

03/16/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0308

DA 20-0308

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2021 MT 69N

IN RE THE MARRIAGE OF:

KAREN M. MYERS,

      Petitioner and Appellant,

    v.

ROBERT N. MYERS, JR.,

      Respondent and Cross-Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the Twelfth Judicial District,<br>In and For the County of Hill, Cause No. DR 2013-083<br>Honorable David Cybulski and Honorable Richard A. Simonton,<br>Presiding Judges |

COUNSEL OF RECORD:

      For Appellant:

            Gary S. Deschenes, Deschenes & Associates Law Offices, Great Falls, Montana

      For Appellee:

            Jamie Vines, Stephen R. Brown, Jr., Bosch, Kuhr, Dugdale & Brown, PLLP, Havre, Montana

                      Submitted on Briefs: December 2, 2020

                                Decided: March 16, 2021

Filed:

                        _____
                                   Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion, shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Karen M. Myers appeals from the Twelfth Judicial District Court order distributing assets pursuant to a marital dissolution between Robert N. Myers and Karen M. Myers. We consider the following issues which we determine are properly before us: (1) whether the District Court erred in its valuation of one of the marital properties (the "Gruszie Property");[1] (2) whether the District Court made mathematical errors in calculating the net value of the marital estate; (3) whether the District Court erred by refusing to grant Karen a security interest in personal property; and (4) whether the District Court abused its discretion by setting an interest rate for the equalization payment at 2.5%. We affirm in part and reverse and remand in part.

---

[1] Robert argues that Karen waived her right to appeal the amount of the equalization payment by accepting several partial payments towards satisfaction of the note guaranteeing the equalization payment. Robert fails to articulate a cogent argument as to how Karen's acceptance of the equalization payments constituted a waiver of her right to appeal the District Court's denial of her motion challenging the valuation of the Gruszie Property, and he cites no legal authority for his argument other than a generalized reference to *In re Marriage of Clark*, 2015 MT 263, ¶ 12, 381 Mont. 50, 357 P.3d 314, that is inapposite to the issue of waiver. We therefore decline to consider this argument. "[W]e are not obligated to develop arguments on behalf of parties to an appeal, nor are we to guess a party's precise position, or develop legal analysis that may lend support to his position." *McCulley v. Am. Land Title Co.*, 2013 MT 89, ¶ 20, 369 Mont. 433, 300 P.3d 679 (citations omitted).

¶3	Karen and Robert married on October 5, 1985. Karen petitioned for dissolution of marriage in 2013.

¶4	On January 28, 2016, the District Court issued Findings of Fact, Conclusions of Law, and Order,[2] dissolving the marriage and distributing the marital estate.

¶5	Among other items in the marital estate, Karen and Robert were equal shareholders of Myers Ranch, Inc., a family farm and ranch, and owned multiple pieces of real property. The District Court awarded Myers Ranch, Inc. to Robert. The District Court awarded all the real property to Robert because it determined that dividing up the properties would jeopardize the viability of Myers Ranch, Inc. to continue operating as a family farm and ranch. The District Court determined the net combined value of the real property to be $2,682,000.

¶6	The District Court calculated the net value of the entire marital estate to be $4,250,000. The District Court determined the marital estate should be divided evenly between the parties. After distribution of the various items in the marital estate, the District Court found Karen was due an equalization payment of $1,715,000. The District Court ordered Robert to execute a note to Karen in that amount, but the Order did not set the terms for payment of the equalization payment. The District Court ordered the parties to confer regarding the terms of the note.

---

[2] The District Court also issued Supplemental Findings on January 28, 2016. Since the Findings of Fact, Conclusions of Law and Order were issued contemporaneously with the Supplemental Findings, we treat them collectively for purposes of this Opinion.

¶7     On April 7, 2016, Karen filed a motion to correct the order, arguing the District Court's valuation of one of the marital properties (the "Gruszie Property") was incorrect as a matter of law, and that the District Court made some mathematical errors in its calculation of the total value of the marital estate. Karen contended the District Court erroneously valued the Gruszie Property at $420,000, its liquidated value after taxes. Karen contended the District Court should have used the appraised fair market value, net of encumbrances, of $752,454. Karen argued the District Court's undervaluation of the Gruszie Property amounted to a windfall to Robert since the property was awarded to him and the District Court's Order did not require him to sell the property.

¶8     Karen argues on appeal that the District Court abused its discretion by reducing the value of the Gruszie Property to account for tax consequences of a sale when the order did not require a sale of the property nor was a finding made that a sale was imminent if the property was awarded to Robert. We agree.

¶9     A district court has discretion to adopt any reasonable valuation of property supported by the record. *In re Marriage of Haberkern*, 2004 MT 29, ¶ 13, 319 Mont. 393, 85 P.3d 743. In a final distribution, a court must consider tax liabilities which are reasonably concrete and imminent. *Haberkern*, ¶ 17. To determine whether the tax consequences are concrete and imminent, the district court must consider the context around the distribution order. *Haberkern*, ¶ 17. At the least, this Court has required that "the distribution order reasonably appear to trigger a taxable event in the context of surrounding circumstances." *In re Marriage of Broesder*, 2017 MT 223, ¶ 13, 388 Mont. 476, 402 P.3d 1193.

¶10 The District Court abused its discretion by valuing the Gruszie Property net of applicable taxes. Nothing in the District Court's Order indicated that tax liabilities relative to the Gruszie Property were reasonably concrete or imminent. Nor did the distribution order reasonably appear to trigger a taxable event in the context of surrounding circumstances. *Marriage of Broesder*, ¶ 13. The reason the District Court gave for valuing the Gruszie Property at the net liquidated price was because it speculated that Robert "will probably be forced to sell it first, *if and when* he has trouble paying the sums due [to Karen]." (Emphasis added.) "If and when" does not constitute a reasonably concrete or imminent incurring of tax liabilities. Accordingly, the District Court erred by discounting the value of the Gruszie Property to account for tax liability.

¶11 Aside from its valuation of the Gruszie Property, Karen contends the dissolution order contained mathematical errors in the valuation of various components of Myers Ranch, Inc. Karen argues that the District Court's order does not comport with the valuations she submitted with her "Motion to Correct Order" as Exhibits B and F, which referenced stipulations, testimony, and the District Court's oral ruling.

¶12 A District Court has broad discretion in determining the value of property in a dissolution. *In re Marriage of Walls*, 278 Mont. 413, 416, 925 P.2d 483, 485 (1996). It may adopt any reasonable valuation of marital property which is supported by the record, and its findings regarding property valuation will not be disturbed unless clearly erroneous. *Marriage of Walls*, 278 Mont. 413, 925 P.2d at 485. Although Karen takes issue with the correlation between the District Court's oral pronouncements and its written findings, as Robert points out the District Court made it clear when it made its oral findings that the

5

findings were "rough" and "preliminary," and noted that more specific findings would follow. Absent clearly erroneous findings, we will affirm a district court's division of property unless we identify an abuse of discretion. *Hollamon v. Hollamon*, 2018 MT 37, ¶ 8. Based on our review of the record in this case, we cannot conclude that the District Court's division of the marital estate was clearly erroneous.

¶13 Karen argues the District Court erred in refusing to award Karen a security interest in personal property because its ruling was based primarily on an incorrect conclusion of law.

¶14 A trial court may secure a marital settlement by granting a security interest in stock or other security arrangements as the court may find necessary to enforce its decree. *Buxbaum v. Buxbaum*, 214 Mont. 1, 692 P.2d 411 (1984). In this case, the District Court determined it was sufficient to grant Karen a security interest in the real property that had been awarded to Robert. The District Court did not err in refusing to award Karen a security interest in personal property. The District Court acted in its discretion when it found it necessary to only grant a security interest in the real property and not personal property to enforce the decree.

¶15 Karen asserts the District Court abused its discretion in setting the interest rate on the equalization payment at 2.5% per annum.

¶16 A financial obligation imposed by a decree that is silent regarding interest is subject to the 10% statutory interest rate under § 25-9-205, MCA. *Schwartz v. Harris*, 2013 MT 145, ¶ 34, 370 Mont. 294, 308 P.3d 949. A district court retains discretion to set

6

an alternate rate of interest. *Schwartz*, ¶ 34. If the district court sets an interest rate that varies from the statutory rate, it must be fair and reasonable. *Schwartz,* ¶ 34.

¶17 The District Court heard conflicting testimony regarding an appropriate interest rate to apply to the equalization payment. Doug Kallenberger, an agricultural loan officer from Stockman Bank in Havre, where the Myers had been conducting business for a number of years, testified that Robert would qualify for an agricultural real estate loan at an annual interest rate of 4.75%, the bank's lowest rate for such loans, over a twenty-year term. Kallenberger clarified, however, that Robert would not qualify for a loan in the amount necessary to make the equalization payment. Robert presented testimony from James Kato, a certified public accountant, who testified that the minimum rate the IRS would allow between related parties was between 2.4% and 2.62%. The District Court settled on a 2.5% interest rate, amortized over 30 years, but noting that Karen should not have to wait that long to get the money to which she was entitled, it ordered Robert to make an initial payment of $500,000, monthly payments subject to the 2.5% interest rate, and the entire amount payable by December 1, 2026.

¶18 The District Court did not abuse its discretion in setting an interest rate based on its consideration of the testimony and balancing the equities of enabling Robert to realistically make the payments necessary while also ensuring that Karen receive the total equalization payment in a timely fashion.

¶19 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent

or modify existing precedent. With the exception of the District Court's valuation of the Gruszie Property, its rulings are affirmed. As it pertains to the valuation of the Gruszie Property, we reverse and remand for the District Court to enter an order consistent with this Opinion.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ MIKE McGRATH
/S/ INGRID GUSTAFSON
/S/ BETH BAKER
/S/ LAURIE McKINNON